## PENDEXTER *v.* CARLETON.

The loss of a deed is shown by the affidavit of the administrator, a party to the suit, that he has diligently sought for it among the papers of the intestate and can not find it.

The contents of a lost deed may be shown by an office copy.

The commencement of an action upon a note, and the service of a summons, are a "demand in writing" of payment, sufficient to charge the party for whose benefit the note was given, upon his obligation to pay it, upon such demand in writing being made.

The proper proof of such a service of a summons, is the production of the summons itself or the writ and return; and parol evidence that such process was commenced and served is insufficient.

In an action upon a mortgage, conditioned to pay a note which the mortgagee has given for the benefit of his mortgager, the .unconditioned promise of the latter, to pay the mortgagee the money, may be left to the jury as evidence that the mortgager has received notice that the mortgagee had paid the note.

A receipt is an admission, and may like unwritten admissions be contradicted by the party making it, although made in pursuance of a fraudulent purpose entertained by both the parties to it.

Where the evidence tends to charge one with goods received to be sold for certain purposes, figures set down by him in a column upon one of the bills and added to the amount of that bill, may be considered by the jury in connection with other facts, as evidence of the amount received by him.

WRIT OF ENTRY to recover a tract of land in Bartlett in this county. The demandant counted upon a mortgage from the tenant to the demandant's intestate dated January 25, 1823, and offered an office copy of a deed of warranty conveying the premises to the intestate without condition, with his own affidavit that he had made diligent search among the papers of his intestate and elsewhere, but the original deed could not be found; and also the affidavit of the register of deeds that it was not to be found in his office. To the admission of the copy upon this evidence of the loss of the original the tenant objected, but the court overruled the objection and admitted the copy.

The tenant then produced a bond from John Pendexter to him bearing even date with the deed, conditioned to reconvey the premises if the tenant should pay to one Theodore Mussey the contents of a certain promissory note, dated January 24, 1823, for $400 and interest, made by the said John Pendexter as principal, and Stephen Meserve and Samuel Pendexter as sureties, whenever the said Mussey should demand the same in writing of either of the signers. The demandant offered the said Stephen Meserve, who testified to the execution of the deed and bond, and to the identity of the original note to said Mussey, which was produced by the demandant, and that the money obtained of Mussey was paid over to the tenant by Pendexter. The witness also testified that some time afterward, Mussey died, and his administrator caused the note to be sued, and a summons was served upon him, and that said John Pendexter settled the action by giving to the administrator a new note of the same amount, executed by the same signers and one other. That this last note was also sued some two or three years after, and a service was again made upon him, but how this action was settled, or by whom, he did not know. After this testimony was given, the tenant objected to its competency to prove the existence of the suits and services, without producing copies for that purpose. But the court overruled the objection. Further evidence was offered tending to prove that the tenant subsequently promised to pay Pendexter the "Mussey debt," and that he bought certain goods in Boston, and put them into Pendexter's store to be sold out under the superintendence of Pendexter, and out of the proceeds of which he was to take pay for the "Mussey debt" and other debts due from the tenant to him; but that the avails of the goods were in part received by the tenant, and the balance was afterward by agreement of parties appropriated for the payment of other claims than the "Mussey debt," and that on the

25th of July 1827 a settlement on account of these goods took place between the parties, and a receipt in full for them was given by the tenant to the intestate, to enable him to make a disclosure in an action then pending against the tenant and himself as his trustee, in the county of Strafford; that the disclosure was then made, and the trustee discharged with the knowledge and consent of the tenant. The receipt was also produced and its execution proved.

The tenant offered evidence tending to prove that the goods aforesaid were purchased in the Spring and Fall of 1825, and were of sufficient value to pay the "Mussey debt," and among other evidence produced an original bill of crockery ware bought of one John Mellen, amounting to $73.18, and dated February 18, 1825, upon the bottom of which were words and figures in the handwriting of Pendexter as follows:

"73.18
395.48
24.60

-----
493.26

Deduct from this amount    14.03

-----    479.23"

which last sum the tenant assumed was the sum total of all the bills of goods aforesaid. The evidence further tended to prove that the settlement and receipt made on the 25th of July 1827, were not intended by the parties to be what they purported to be, a true and genuine settlement and payment for the goods; but were made to enable Pendexter to make such a disclosure as would discharge him from his liability as trustee; and that a different arrangement was subsequently to have been made between the parties, which arrangement in fact never took place. The tenant offered no evidence to show that he ever paid any part of the "Mussey debt" to any other person than to Pendexter.

The court instructed the jury, that the commencement of a suit upon the Mussey note, and the service of a writ upon the signers, were a sufficient "demand in writing" as required by the bond; that it was not necessary that the demandant should prove a special notice to the tenant, of the demand, but that they might infer it from the evidence of his subsequent promise to pay the debt to Pendexter, and the settlement and dealings between them; that there was competent evidence from which they might infer that Pendexter paid the note to Mussey's administrator; that if they believed from all the evidence before them that the settlement and receipt made July 25, 1827, were intended and designed to enable Pendexter to make a false disclosure, whereby to defraud and cheat the creditors of the tenant, and thus to commit perjury, the tenant could not now come in and claim an advantage from his own wrong, by showing a verbal agreement between themselves that they should afterward be treated as a nullity, and a different disposition of the property in Pendexter's hands be made; that if Carleton participated in such a fraudulent transaction, he would have no relief, in this court, from the binding effect of such a bargain. The court remarked to the jury, that if they should find it important to settle the whole value of the goods, the bare writing and figures on the bottom of Mellen's bill unexplained by other evidence, would be but slight evidence that their real value was $479.23; but they might consider it with the other evidence to find the fact.

The jury returned a verdict for the demandant, and the tenant moved to set it aside and for a new trial on account of the errors in the rulings and instructions of the court.

*Bellows*, for the defendant. The mortgage was made to secure the plaintiff's intestate an indemnity for signing

a note to Mussey for the benefit of the defendant. The defence in the action is the payment of the note.

We object to the proof of the contents of the deed by the office copy. It was not the purpose of the registry of deeds to prove the contents of instruments that should be in the possession of the party requiring the proof.

The demand of the payment of the Mussey note was to have been made in writing. The attempt was to prove a demand by bringing a suit. We say that there was no competent evidence of the commencement of the suit. No papers were produced, nor was there evidence to excuse the omission to produce them.

If the evidence of the commencement of the suit was proper, yet that was not a demand in writing within the meaning of the bond. Nor was the production of the note at the trial a demand in writing or evidence that such a demand had been made by the creditor. If the demandant paid the note without any written demand, he paid it at his own risk and can not thereby charge this defendant. Before a forfeiture could accrue, a demand should have been made upon one of the signers, and notice of it given to the tenant, and payment should have been made of the note.

The court undertook to instruct the jury on matters of fact; and upon the effect of the entries made by Pendexter's clerk upon Mellen & Co's bill of goods, instructed the jury that it was but slight evidence of the amount that passed into the hands of the intestate.

The principal question is as to the instruction of the court upon the effect of the settlement between the intestate and the defendant, and the receipt which the defendant gave for a purpose not in good faith. The question is whether this attempt between the parties to perpetrate a fraud, must prevent the defendant from showing the truth and that the receipt was a sham.

A receipt is like any other admission of a party, and

Pendexter *v.* Carleton.

may be contradicted and shown to have been founded in error, or to have been made for any other, even a fraudulent purpose. 2 Cow. Phil. 213; 1 Phil. 108; 2 Mason 561; Greenl. Ev. 24.

The consideration of a note which in terms admits value received, may be contradicted. 4 Johns. 23; 17 do. 249; 14 do. 216; 1 Bingh. 502; 2 N. H. 506; 4 do. 229. And it is the same though the parties in giving the receipt, or admitting the reception of the value, do it for the purpose of defrauding others. 4 Washb. 297; 24 Pick. 141, which is directly in point. *Roby* v. *West,* 4 N. H. 285; 11 Wheat. 258. In the case from 24 Pick. the note was made to protect property against creditors, and the maker was afterward permitted to show want of consideration.

*Wells,* for the demandant. The testimony of a party in a cause may be admitted to prove the loss of an instrument in order to lay the foundation of secondary evidence of its contents. *McNiel* v. *McClintock,* 5 N. H. 355. A copy of the record is the best proof of the contents of a deed that has been lost.

Carleton was bound to take notice of any demand in writing that should have been made upon any of the signers of the note. The bond provided for no notice to be given to him.

Woods, J. The case presents several points for consideration; some of them however may easily be disposed of by referring to the earlier decisions of the court.

1. If a writing be lost, its contents may be shown by secondary evidence. It is shown to be lost, when upon diligent search in the place of its usual and proper custody, it can not be found. And the affidavit of the party desiring to avail himself of the instrument, is in law sufficient to prove the loss, if it go to the point of proving the facts which amount to the complex notion of a loss. This

was the precise point determined in *McNiel* v. *McClintock*, 5 N. H. 355. The demandant is administrator, and has made diligent search among the papers of the intestate and elsewhere, and the recorder of deeds for the county has examined the proper files in his office, and the deed can not be found. This evidence clearly establishes, *primâ facie*, the loss of the instrument. This subject was fully considered in *Woods* v. *Gassett*, 11 N. H. 442; *Donalson* v. *Taylor*, 8 Pick. 272; and the ruling was in accordance with those cases.

2. If a deed or other instrument be *lost, its contents* may be shown by other competent evidence; and the question is, whether an office copy of a deed or other instrument required by law to be recorded, is such evidence. That question also was considered and decided in *Southerin* v. *Mendum*, 5 N. H. 420, in which case, it appears that it is the best evidence, since such use of the copy was one of the objects for which the registry of deeds was established.

3. The bond of defeasance required that the tenant should pay the Mussey note upon demand made in writing of either of the makers. The note was made by John Pendexter the intestate, Stephen Meserve and Samuel Pendexter. To prove the demand in writing, the testimony of Meserve was introduced, which was to the effect that the administrator of Mussey commenced a suit upon the note, and that the writ was served by a summons upon himself. This is without doubt a demand in writing. The bond settled no form in which the demand should be set forth in the writing, or that the writing should bear the signature of the party making it, or of any one else. There seems to be no reason to question that a sufficient demand to satisfy the exigence of the bond, was made by commencing a suit upon the note by a writ and summons served upon the proper party.

But a different question arises upon the evidence that

was introduced to prove the commencement of the suit. Whether a sufficient written demand was made, depends upon the contents of the writing. This can not regularly be shown but upon inspection of the writing itself, except, of course, when that is lost, and a case is thus made for the introduction of other proof of the contents.

The ruling therefore which admitted the testimony of Meserve alone, to prove the commencement of an action upon the note, was erroneous.

4. The ruling of the court was right, that notice to the tenant of the payment of the note to Mussey might be inferred from the promise of the tenant to pay the same to the intestate, and from his making provision to do so. The evidence was, that an action was commenced upon the note, and that it was settled by some one, and that subsequently the tenant promised to pay the Mussey debt to the demandant's intestate, and that he placed at his disposal certain goods to be sold for the purpose. It is impossible to see any valid objection to the ruling of the court in this particular, and the evidence of notice seems to have been cogent.

5. The next point relates to the effect, as between these parties, of a receipt which the intestate received from the tenant, in pursuance of an arrangement between the two to conceal the property of the latter, and to prevent the former from becoming charged as his trustee at the suit of a creditor.

A receipt is a written admission made by the party signing it, of the fact which it recites, and is evidence against him, at all times, that the fact so admitted is true. In that respect it is like an unwritten or verbal admission of a fact, and derives no greater legal effect from the written form in which it is preserved than attaches to writing in general, as a safer and more enduring memorial than the mere recollection of a witness of what was said or done. It is not of the nature of a written contract,

whose tenor and purport can not be affected by the evidence of what was said or done contrary to its terms.

The consequence is, that like a mere verbal admission, it may be contradicted by evidence to show that it was founded in misapprehension or surprise; that it was made for a particular purpose, and that its use was by the understanding of the parties to be limited to special occasions. If it forms a part of a contract, and is embodied in the writing which contains its terms, it may still be contradicted, and the stipulations founded upon the consideration admitted to have been received, may fail in such cases for want of consideration. These positions are fully sustained by the authorities, and are of familiar application. 1 Greenl. Ev., sec. 305; *Harden* v. *Gordon*, 2 Mason 561.

The position taken at the trial was, that this receipt having been given by the defendant to the intestate, for the fraudulent purpose of avoiding the just claims of creditors upon his property in the intestate's hands, and having served that fraudulent purpose, shall not now be avoided by evidence to be produced by the party who instituted the fraud, to show that it was a transaction of that character, and was not intended to bind the parties to it. In other words, that a party shall not avoid the legal consequences of his acts, by showing them to have been done for a merely fraudulent purpose, and not with an intent that they should have the legal effect that might otherwise be attributed to them. Such would undoubtedly be the effect of a conveyance, and the maxim of *potior conditio possidentis* would apply. Rob. Fraud. Conv., chap. 7, sec. 1.

But a receipt bears no analogy to a conveyance. It conveys nothing. It is not even an agreement, as has been shown. If it were such, it would be the demandant in the present case, who seeks to avail himself of it, and whose claim to its benefits would be met by the usual ob-

Pendexter *v.* Carleton.

jection to the enforcement of an immoral and illegal contract. He exhibits the receipt, and insists upon its legal effect to estop the tenant from proving the truth. If it had its inception in fraud, it is without efficacy in a court of justice. *Roby* v. *West,* 4 N. H. 285.

But the true ground appears to be, that the defendant, having made an admission, may yet be suffered to show that the fact admitted is not true, notwithstanding the admission was made for a purpose not justified by law, and contrary to good faith; since the demandant has not based any honest action upon it, and has in no way been deceived. To this point, substantially, is the case of *Wearse* v. *Peirce,* 24 Pick. 141.

We conclude therefore that the ruling of the court was upon this point erroneous.

6. The figures in the hand-writing of Pendexter, the intestate, upon the bill of Mellen, were correctly held to be evidence in the case. The acts of the intestate might in general have been shown in evidence in the case, and although the significancy of any one of them taken alone might not have been obvious, or very important, the tenant has a right to lay them before the jury, if they appear to have any bearing at all upon the issue. There was evidence here that a quantity of merchandize was placed by the tenant at the disposal of Pendexter, the intestate. Upon one of the bills and in a column beneath its sum, in figures, were traced by Pendexter certain other sums; and the amount of the whole computed and set down by him. This might we think afford the jury some ground to infer that the sums added to Mellen's bill for some purpose or other, might have passed with this into Pendexter's hands.

The verdict must be set aside upon the ground of the errors indicated, which were first, the admission of verbal testimony without any papers to show the written demand of the money due upon the note to Mussey; and secondly, the misdirection as to the effect of the receipt given by

the defendant to Pendexter, and the consequent exclusion of the evidence offered by the defendant to contradict it.

There were other exceptions reported, but they appear to be immaterial in consequence of the views which have been presented.

*New trial granted.*